IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIUS WOMACK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CRIMINAL NO. 08-0391-WS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

This matter comes before the Court on petitioner Julius Womack's filing styled "Time-Sensitive Motion for Compassionate Release" (doc. 109).

The court file reflects that, following a jury trial, Womack was convicted of bank robbery, in violation of 18 U.S.C. § 2113(a) & (d), and use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). This Court sentenced Womack to a total term of imprisonment of 216 months, including a 120-month mandatory consecutive term for the § 924(c) violation. Womack has served approximately 12 years of that sentence and has a projected release date of June 17, 2024. He is presently incarcerated at FCI Talladega, a medium-security facility in Talladega, Alabama.

Womack is one of numerous defendants who has petitioned this Court for compassionate release or modification of sentence based on the effects of the COVID-19 pandemic. In his Motion, filed *pro se*, Womack invokes 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act enacted in December 2018. That section allows a defendant to petition the Court directly for reduction of a term of imprisonment for "extraordinary and compelling reasons," without a motion by the Director of the Bureau of Prisons ("BOP"), after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A). Womack indicates that he submitted such a request to the Warden of FCI Talladega on May 9, 2020, but that the Warden denied it in writing on June 16, 2020. Womack could have pursued an administrative appeal, but apparently did not do so. In these circumstances, the Court assumes

(without deciding) that the amended version of the statute authorizes Womack to request judicial modification of his term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Critically, however, any such reduction in sentence for "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement, set forth at Application Note 1 to the Commentary of § 1B1.13 of the Federal Sentencing Guidelines, defines "extraordinary and compelling reasons" justifying sentence reduction as including (i) the defendant's serious medical condition diminishing his ability to provide self-care within the environment of a correctional facility; (ii) the advanced age of the defendant; (iii) family circumstances such as death or incapacitation of the caregiver of the defendant's minor children; and (iv) other reasons "[a]s determined by the Director of the Bureau of Prisons." *Id.* Womack's Motion in no way implicates the first three categories of extraordinary and compelling reasons;[1] therefore, his request would appear to rise or fall on the fourth ground identified by the Sentencing Commission.

The BOP's Program Statement 5050.50 identifies in some detail the types of reasons that the Director of the BOP deems "extraordinary and compelling" within the fourth prong of the Sentencing Commission's policy statement. Nothing in PS 5050.50 reflects a determination by the BOP that compassionate release may be appropriate based on an inmate's generalized fear of contracting COVID-19 in prison. As such, Womack is effectively urging this Court to find that his circumstances constitute an "extraordinary and compelling reason" for § 3582(c)(1)(A) relief, even though doing so would <u>not</u> be within the scope of reasons determined by the BOP to be extraordinary and compelling and therefore would <u>not</u> be consistent with the Sentencing Commission's applicable policy statement. Simply put, then, Womack's Motion would have this Court ignore statutory language requiring that sentence reductions for "extraordinary and compelling reasons" be consistent with Sentencing Commission policy statements by essentially superimposing the Court's own policy preferences over those of the Sentencing Commission and

---

[1] To be sure, Womack indicates that he suffers from certain medical conditions that "hamper his physical abilities and … cause significant physical discomfort." (Doc. 109, PageID.721.) However, he makes no showing whatsoever that these conditions presently diminish his ability to provide self-care in a prison environment.

the Bureau of Prisons.  This Court has previously declined to do so.  *See United States v. Lynn*, 2019 WL 3805349, *4 (S.D. Ala. Aug. 13, 2019) ("Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version.  Until that day, however, the Court must follow the policy statement as it stands.").  It reaches the same conclusion today for the same reasons set forth in *Lynn*.

Even assuming this Court were empowered now to make determinations of "extraordinary and compelling reasons" in addition to those specified in U.S.S.C. § 1B1.13 and PS 5050.50, the undersigned would not find that the circumstances described by Womack meet that high standard for compassionate release.  To understand why, it is helpful to examine § 12003(b)(2) of the CARES Act, which granted the Attorney General authority to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement beyond the limits imposed by 18 U.S.C. § 3624(c)(2).[2]  In exercising this authority, the Attorney General has issued Memoranda to the Director of the BOP dated March 26, 2020 and April 3, 2020.  Among other things, those Memoranda enumerate criteria for inmates to be eligible for home confinement.  Those discretionary factors include, without limitation, the following: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (ii) the security level of the facility, with priority given to inmates residing in low and minimum security facilities; (iii) the inmate's conduct in prison; (iv) the inmate's score under PATTERN, with inmates scoring above the minimum score not receiving priority treatment; (v) whether the inmate has a demonstrated, verifiable re-entry plan that will prevent recidivism and maximize public safety; and (vi) the seriousness and severity of the inmate's crime of conviction and danger posed by the inmate to the community.  The Attorney General also directed the BOP to maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where significant levels of COVID-19 infection are materially affecting operations.

Many of the non-exhaustive factors listed in the Attorney General's Memoranda do not favor home confinement or early release in this case.  Womack states that he is 39 years old, so

---

[2]   The Court recognizes, of course, that Womack has not specifically requested to serve the remainder of his sentence under home confinement; rather, his Motion is expressly predicated on a request for early release.  Nonetheless, the factors that are relevant in the home confinement inquiry are also helpful in analyzing whether a defendant should be granted early release under the First Step Act because of COVID-19 related concerns.

he is not of an advanced age that might heighten his risk of contracting COVID-19.  Moreover, while Womack enumerates four health conditions that he contends elevate his risk of becoming infected, the medical records he submitted in support of his Motion reflect that three of those conditions (allergic rhinitis, acute upper respiratory infection, anemia) are either resolved or in remission.  (Doc. 109, PageID.734.)  Womack's fourth condition (thyroid disorder) is listed in the medical records as a current, chronic condition; however, he cites no evidence and no reason to believe that such a condition is associated with an elevated risk of COVID-19 infection.  Information available to the Court is to the contrary.[3]  Further, Womack's statements that COVID-19 has been spreading at FCI Talladega since May 2020 appear inaccurate.  According to current data reported by the BOP, only 5 inmates at that facility have received positive tests for COVID-19.  Also weighing against granting compassionate release are the facts that (i) Womack is housed in a medium-security facility, not a low- or minimum-security facility; (ii) he still has nearly four years remaining to serve on his sentence; and (iii) his crimes of conviction are serious bank robbery and firearms offenses.

After weighing all of the relevant circumstances and information presented, the Court concludes that Womack has made no showing of the sort of "extraordinary and compelling reasons" contemplated by 18 U.S.C. § 3582(c)(1)(A)(i) that might warrant the discretionary exercise of any First Step Act authority for compassionate release or sentence modification to protect him from risks of contracting the COVID-19 virus in prison.  Accordingly, his Motion for Compassionate Release (doc. 109) is **denied**.

DONE and ORDERED this 10th day of July, 2020.

>  s/ WILLIAM H. STEELE
>  UNITED STATES DISTRICT JUDGE

---

[3]     In particular, the Court takes judicial notice that the American Thyroid Association has stated that "[t]hus far, there is no indication that patients with autoimmune thyroid disease are at greater risk of getting COVID-19 or of being more severely affected should they acquire the COVID-19 infection." https://www.thyroid.org/covid-19/coronavirus-frequently-asked-questions (*retrieved* July 9, 2020).  Likewise, the Association states that even "[h]aving a previous diagnosis of thyroid cancer and receiving thyroid hormone medication is not a known risk factor for getting COVID-19 or being more severely affected by it."  *Id.*